UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOWARD STEELE, as the Personal Representative for the Estate of Lee Ann Steele, JANETTE GRIEB, a single person, and SHARON GUNDERSON, aka SHARON PRIEBE,

Plaintiffs,

v.

EXTENDICARE HEALTH SERVICES, INC.; EXTENDICARE HOMES, INC.; and FIR LANE TERRACE CONVALESCENT CENTER, INC.,

Defendants.

CASE NO. C08-1332-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment Against Plaintiffs Grieb and Gunderson (Dkt. No. 30), Plaintiffs' Response in opposition (Dkt. No. 42), and Defendants' Reply (Dkt. No. 65). In addition, this Order addresses Plaintiffs' Motion to Continue the Hearing Pursuant to Federal Rule of Civil Procedure 56(f) (Dkt. No. 36), Defendants' Response in opposition (Dkt. No. 60), and Plaintiffs' Reply (Dkt. No. 63). The Court has carefully considered these papers and their supporting declarations and exhibits, including Defendants' Supplemental Authority in support of their motion for summary judgment (Dkt. No. 87)[1] and Plaintiffs' Response to Defendants'

---

[1] The Court has not, however, taken into consideration the "Responsive Declaration of Stephen M. Garcia in Extendicare Washington in Support of Rule 56(f) Motion." (Dkt. No. 86.) In it, Mr. Garcia

ORDER – 1

1 Supplemental Authority (Dkt. No. 90), and has determined that oral argument is not necessary. The
2 Court hereby finds and rules as follows.

**I. BACKGROUND**

On August 21, 2008, Plaintiff Howard Steele[2] filed a class action complaint in King County Superior Court, asserting that Defendants violated the Washington Consumer Protection Act ("CPA" or the "Act"), WASH. REV. CODE Ch.19.86, by failing "to operate their nursing homes in conformity with their representations and advertisements made to the general public and prospective residents[.]" (State Compl. ¶ 30 (Dkt. No. 1 at 23).) Steele asserted that Defendants intentionally misrepresented that their nursing homes met the needs of their residents. (*Id.*) The class sought to be certified included all persons who resided in Washington nursing homes owned, operated, or managed by Defendants from August 15, 2004 to August 15, 2008. (*Id.* ¶ 1.) The complaint made clear that the sole cause of action was violation of the CPA and that the "action [did] not seek recovery for bodily injury, wrongful death or other personal injury claims that an individual class member may have with respect to care provided (or not provided)" at Defendants' facilities. (*Id.* ¶ 30.)

Defendants removed the case to federal court on September 5, 2008. (Notice of Removal (Dkt. No. 1 at 1–8).) On October 1, 2008, Steele filed an Amended Complaint, which added Janette Grieb and Sharon Gunderson as Plaintiffs. (Am. Compl. ¶¶ 10–11 (Dkt. No. 15 at 5–6).) Because Steele has since been voluntarily dismissed from the lawsuit, Grieb and Gunderson are the sole remaining named

---

states that he "strenuously disagree[s] with the conclusionary argument contained within Ms. Duffy's declaration." (*Id.* at 2.) Plaintiffs had an opportunity to voice their disagreements with Defendants' Response (Dkt. No. 60) and the Duffy Declaration attached thereto (Dkt. No. 61) in their Reply filed on January 9, 2009 (Dkt. No. 63). The additional "responsive declaration" filed on February 25, 2009, is therefore improper.

[2]Plaintiff Howard Steele was voluntarily dismissed from this lawsuit on February 24, 2009. (Dkt. No. 85.)

ORDER – 2

Plaintiffs. Both former short-term residents[3] at Defendants' facilities, Plaintiffs articulate their CPA cause of action as follows:

> In particular, Defendants engaged in unfair competition or deceptive acts or practices in violation of the CPA when they represented, through their advertising, warranties, and other express representations, that their skilled nursing home services had benefits or characteristics that they did not actually have. The Defendants further violated the CPA when they falsely represented that their nursing homes were of a particular standard or quality when they were not. Finally, the Defendants violated the CPA when they advertised their nursing home services with the intent not to sell them as advertised, and when, in so doing, they concealed and suppressed facts material to the true characteristics, standards, and quality of their nursing home services. The Defendants' deceptive practices were specifically designed to induce members of the general public and prospective residents to become residents of their facilities and begin making payments and/or authorize the making of payments on their behalf for the Defendants' nursing home services.

(*Id.* ¶¶ 100–101.)

In the instant motion, filed on December 15, 2008, Defendants move the Court for summary judgment on the claims asserted by Grieb and Gunderson, on grounds that Plaintiffs cannot support several of the elements of their CPA claims. (Mot. 1 (Dkt. No. 30).) Plaintiffs filed a Motion to Continue the hearing of the summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f), arguing that they needed more time to conduct discovery before they could fully respond to the motion. (Dkt. No. 36.) Nevertheless, they filed a Response opposing the motion for summary judgment on January 5, 2009. (Dkt. No. 42.) For the reasons discussed herein, the Court DENIES the motion to continue the hearing and will therefore address both the summary judgment motion and the motion to continue the hearing, in turn, below.

//

//

---

[3] Grieb stayed at Bremerton Health & Rehabilitation Center ("Bremerton"), owned by Defendant Fir Lane Terrace Convalescent Center, Inc., for eight days while recuperating from knee replacement surgery. (Am. Compl. ¶ 10 (Dkt. No. 15 at 5); Grieb Dep. 51:13–16 (Dkt. No. 31-2 at 7); Grieb Decl. ¶ 3 (Dkt. No. 46 at 2).) Gunderson stayed at Aldercrest Health & Rehabilitation Center ("Aldercrest"), owned by Defendant Extendicare Homes, for 19 days while she recuperated from back surgery. (Gunderson Decl. ¶ 3 (Dkt. No. 47 at 2); Gunderson Dep. 43:14–15 (Dkt. No. 31-3 at 6).)

ORDER – 3

## II. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a summary judgment motion, . . . the [non-moving party] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Further, "[w]hether a particular action gives rise to a violation of the CPA is reviewable as a question of law." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 718 (Wash. Ct. App. 1992).

#### 2. Analysis

Washington's CPA is intended "to protect the public and foster fair and honest competition."

ORDER – 4

WASH. REV. CODE § 19.86.920. Initially, the Act authorized only the Attorney General to enforce it; however, the State Legislature amended the CPA in 1971 to provide a private right of action to encourage individual citizens to bring suit to enforce the Act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 534 (Wash. 1986). "To establish a CPA violation, the plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in her business or property, and (5) the injury is causally linked to the unfair or deceptive act." *Michael v. Mosquera-Lacy*, 200 P.3d 695, 698–99 (Wash. 2009) (*citing Hangman Ridge*, 719 P.2d at 535). "A plaintiff alleging injury under the CPA must establish all five elements." *Id.* at 699; *see also Johnson v. Camp Auto., Inc.*, 199 P.3d 491, 493 (Wash. Ct. App. 2009) ("The failure to establish any of the elements is fatal to a CPA claim.").

In the instant motion, Defendants argue that Plaintiffs cannot establish the fourth or fifth elements, injury to their business or property and causation. Further, Defendants argue that Plaintiffs' "real complaint in this case relates solely to the non-entrepreneurial aspects of Defendants' health care business, which does not fall within the scope of the CPA." (Mot. 2 (Dkt. No. 30).) The Court will address these contentions in turn.

### a. Injury to the Plaintiff In Her Business or Property

In *Hangman Ridge*, the Washington Supreme Court first announced that a plaintiff must prove, as an independent element of a CPA claim, "injury to plaintiff in his or her business or property." 719 P.2d at 535. The court explained that "the injury involved need not be great, but it must be established." *Id.* at 539. In subsequent cases, the court has elaborated on the meaning of a CPA injury. The injury must be to the plaintiff's "business or property;" therefore, "[p]ersonal injuries are not compensable damages under the CPA." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1064 (Wash. 1993). Specifically, pain and suffering and emotional distress damages are not compensable CPA injuries. *White River Estates v. Hiltbruner*, 953 P.2d 796, 797 n.1 (Wash. 1998).

ORDER – 5

Further, the Washington Supreme Court has explained:

> [N]o monetary damages need be proven, and . . . nonquantifiable injuries, such as loss of goodwill would suffice for this element[.] . . . A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation. The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.

*Mason v. Mortgage Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990) (internal citations omitted).

Thus, for example, where a nursing home withheld a refund for two weeks beyond the 30-day deadline permitted by law, thereby depriving the plaintiff of the use of his funds, such an injury constituted a compensable CPA injury. *Sorrel v. Eagle Healthcare, Inc.*, 38 P.3d 1024, 1029 (Wash. Ct. App. 2002). The loss of title to real property is "obviously" an injury to property within the CPA. *Mason*, 792 P.2d at 149. Although having to defend against a collection action and prosecute a CPA claim is not sufficient injury, being unable to tend to one's business as one normally would and losing consulting work because of the defendant's deceptive acts is sufficient, even if the amount of business lost is not quantifiable. *Sign-O-Lite Signs*, 825 P.2d at 720. Loss of appreciation in real property suffices. *Sing v. John L. Scott, Inc.*, 920 P.2d 589, 598 (Wash. Ct. App. 1996), *rev'd on other grounds*, 948 P.2d 816 (Wash. 1997).

Defendants argue that Plaintiffs cannot establish any injury that meets the CPA standard. The Court agrees. At the depositions of Grieb and Gunderson, both Plaintiffs pointed exclusively to emotional distress or psychological harm when asked how they believed they were injured. (Grieb Dep. 186:4–24 (Dkt. No. 31-2 at 18); Gunderson Dep. 26:12–22, 207:3–208:15 (Dkt. No. 31-3 at 20).) As noted above, emotional distress damages are not compensable CPA injuries. *White River Estates*, 953 P.2d at 797 n.1. Neither Plaintiff has shown that she suffered pecuniary losses of any sort. Grieb's stay at the nursing home was paid for by private insurance and resulted in no deductible payment or increase in her premium payments. (Grieb Dep. 49:1–50:17 (Dkt. No. 31-2 at 6–7).) She testified that she would have paid her monthly premium regardless of whether she used any benefits and that therefore, even if

ORDER – 6

she had not been a resident at one of Defendants' facilities, she would have paid the same amount. (*Id.* at 186:21–24.) Likewise, Medicaid and disability benefits covered Gunderson's stay. (Gunderson Dep. 43:25–44:7 (Dkt. No. 31-3 at 6).) She testified that the amount that was paid on her behalf by Medicaid and the Social Security Administration was not affected by the quality of care she received at Defendants' facility. (*Id.* at 202:9–203:12.) Therefore, Plaintiffs do not present an injury that could be considered a loss of use of property or a diminishment of funds stemming from Defendants' allegedly deceptive acts. *Cf. Ambach v. French*, 173 P.3d 941, 945 (Wash. Ct. App. 2007) (holding that economic loss due to the increased cost of unnecessary medical care over the cost of more conservative treatment is sufficient for a CPA injury).

Plaintiffs argue in their opposition to summary judgment that they had property rights in their insurance and Medicaid and disability benefits and that they lost part of the value of those property rights when they received lesser-quality services than they were promised. (Resp. 2 (Dkt. No. 42).) No Washington court has examined whether such an articulation of injury is sufficient under the CPA. However, even if such a claim were a compensable CPA injury, the Court is not persuaded that Plaintiffs have established such an injury here. They provided no support beyond conclusory allegations in their opposition brief to support this claim. In *Benoy v. Simons*, the Washington Court of Appeals considered the fact that the plaintiffs failed to provide supporting documentation of their alleged injury, i.e., that their medical bills caused them to file bankruptcy, in affirming the trial court's dismissal of a CPA claim. 831 P.2d 167, 172 (Wash. Ct. App. 1992). Similarly, in a recent unpublished opinion, the Washington Court of Appeals held that where a plaintiff claimed that her car had diminished value because of the defendant's deceptive acts, she should have submitted to the trial court a report prepared by the auto mechanic to establish her loss at summary judgment. *See Reed v. Whitacre*, No. 36480-8-II, 2008 WL 4635914, at *3 (Wash. Ct. App. Oct. 21, 2008) (reversing the trial court's denial of the defendant's summary judgment motion because the trial court permitted the case to proceed even though the plaintiff had not provided sufficient evidence to prove all five elements of a CPA claim). While

ORDER – 7

Plaintiffs apparently claimed in their initial disclosures that expert testimony would show that Plaintiffs suffered up to a 40% diminution of the value of the services they were entitled to, (Mot. 3 (Dkt. No. 30)), Plaintiffs make no such showing at summary judgment. Nor did they ask for more time to procure such evidence, despite their moving the Court for a continuance on other grounds. (*See* Mot. For Continuance (Dkt. No. 36).) Therefore, the Court is not persuaded that Plaintiffs have made a sufficient showing that the CPA injury requirement has been met.

Moreover, even if Plaintiffs could show a CPA injury, the Court is not persuaded that they have met the fifth element of a CPA claim, causation.

### b. Causation

"To establish the causation element in a CPA claim, a plaintiff must show that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 290 (Wash. Ct. App. 2008) (*citing Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007)).

Defendants argue that the undisputed facts as established at Plaintiffs' depositions shows that Defendants' advertising and any other alleged misrepresentations actually played no role whatsoever in Plaintiffs' decisions to stay in Defendants' nursing homes and therefore could not be the cause of any alleged harm. The Court finds this argument persuasive.

Grieb testified that she chose to stay at Bremerton while recuperating from knee surgery because Bremerton was at the top of an alphabetical list of the three postoperative care facilities covered by her insurance company. (Grieb Dep. 66:25–67–3, 68:2–12 (Dkt. No. 31-2 at 9).) She testified that other than choosing Bremerton from the top of the alphabetical list, she did nothing else to investigate Bremerton before selecting it as the facility in which to recover. (*Id*. at 68:13–16.) She does not believe that she looked up Bremerton or its parent company online and did not collect any information regarding the facility before she decided to stay there. (*Id*. at 68:13–69:11.) Rather, Grieb testified that her "thought

ORDER – 8

process was that the insurance covered it, and that all three of them [on the alphabetical list] were probably adequate and did the job." (*Id*. at 69:11–14.)

Likewise, Gunderson testified that she stayed at Aldercrest while recovering from back surgery because (1) it was a facility other than the one in which her stepfather had resided when he passed away a few years prior, (2) it was located in the Edmonds area near her mother, and (3) it accepted Medicaid as a form of payment. (Gunderson Dep. 93:2–16 (Dkt. No. 31-3 at 10).) She testified that she did not look at any brochures, advertisements, or other literature before deciding to stay at Aldercrest. (*Id*. at 93:17–20.)

In fact, Plaintiffs appear to have conceded in their opposition to summary judgment brief that they were not influenced by any advertising to select Defendants' facilities. Rather, they switch the focus of their complaint from Defendants' advertising to their Admissions Agreement:

> Defendants' Admission Agreement, which was uniform throughout Extendicare's nursing home facilities, contained misrepresentations as to the nature and/or characteristics of their services. The standard form admission agreement provided to each and every resident of an Extendicare facility in the State of Washington includes misrepresentations that the facilities will provide services "as required by law."

(Resp. 2 (Dkt. No. 42).)

However, Grieb testified that she saw and signed the admission documents for the first time on the day before she left the facility, November 7, 2007, not before or at the time she arrived on October 31, 2007. (Grieb Dep. 23:4–24:22 (Dkt. No. 31-2 at 4).) Therefore, any representations that may or may not have been made in that agreement could not have caused Grieb to choose to stay at Defendants' facility and could not have been a "but for" cause of any injuries.[4]

There is no evidence that Gunderson ever saw an Admissions Agreement prior to, or during, her

---

[4] Grieb's signed Admission Agreement is dated November 7, 2007. (Dkt. No. 43-2 at 10.) Although there also appears to be a version of the Admission Agreement dated October 31, 2007, with Janette Grieb's name on it, (Dkt. No. 43-2 at 21), Ms. Grieb does not claim that she actually signed it, stating in her declaration that it contains only her "purported signature." (Grieb Decl. ¶ 6 (Dkt. No. 46 at 2).)

ORDER – 9

stay at Aldercrest. Nowhere does she make this claim. In her Declaration, she states only that she has read, at an unspecified time, a standard, unsigned, version of the agreement that was produced in this litigation. (Gunderson Decl. ¶ 5 (Dkt. No. 47).) Defendants have asserted that despite diligent efforts, they have been unable to find an Admissions Agreement signed by or associated with Gunderson and they believe that she was never presented with one. (Duffy Decl. ¶ 28 (Dkt. No. 61 at 11).) Even if she did receive an Admissions Agreement, her testimony shows that she did not consider any of Defendants' representations in deciding whether to stay at Defendants' facility:

> Q. And just so I'm clear, you didn't look at any brochures, advertisement, literature of any sort before deciding to go to Aldercrest?
>
> A. No.

(Gunderson Dep. 93:17–20 (Dkt. No. 31-3 at 10).) Plaintiff identifies no representation by Defendants that influenced her decision to stay at Aldercrest. As such, she cannot show that any representation by Defendants was a "but for" cause of her alleged injuries.

Plaintiffs also contend in their opposition brief that they were not told about Defendants' history of violating State health statutes and regulations as cited by the Department of Social and Health Services, and that if they had been aware of these violations, they would not have selected Defendants' facilities. (Resp. 18 (Dkt. No. 42).) However, Washington "cases establish a general duty on the part of a seller to disclose facts material to a transaction when the facts are known to the seller but not easily discoverable by the buyer." *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct. App. 1998). Defendants state that they satisfied any duty to disclose by making their regulatory history easily available to Plaintiffs and the general public pursuant to federal and state law. (Reply 6 (Dkt. No. 65).) Plaintiffs' own expert, a registered nurse licensed to practice in the State of California, has testified that Defendants' history of deficiencies is reported on the publicly available resource of a United States government website. (Meggers Decl. ¶¶ 6–7 (Dkt. No. 45 at 3).) Therefore, the Court is not persuaded that Defendants' citation history was not easily discoverable by Plaintiffs, had they chosen to look for

ORDER – 10

it.[5] Therefore, Plaintiffs cannot show that Defendants' alleged non-disclosure of their citation history was a "but for" cause of any alleged injuries.

Because the Court finds that Plaintiffs have failed to meet their burden at summary judgment of showing that material issues of fact exist as to whether they can prove either the causation or injury elements of their CPA claim, the Court must GRANT Defendants' Motion for Summary Judgment Against Plaintiffs Grieb and Gunderson. (Dkt. No. 30.)[6]

**B.     Motion to Continue the Hearing**

"If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f). Plaintiffs asked the Court to continue the hearing on Plaintiffs' summary judgment motion only to enable them to "uncover all representations made by the Defendants' representatives during the admissions process." (Mot. to Continue 3 (Dkt. No. 36).) Because such discovery is irrelevant to the injury element of Plaintiffs' CPA claim and because both Plaintiffs testified that the factors they considered in deciding whether to stay at Defendants' facilities did not include any representations by Defendants, a continuance would not assist Plaintiffs in opposing summary judgment. Accordingly, the Court DENIES the request for a continuance. (Dkt. No. 36.)

//

---

[5] Moreover, both Plaintiffs have testified that they did not do any investigating before deciding to stay in Defendants' facilities. (Grieb dep. 68:13–69:17 (Dkt. No. 31-2 at 9); Gunderson Dep. 94:10–95:2 (Dkt. No. 31-3 at 11).)

[6] Notwithstanding the Court's findings as to the insufficiency of Plaintiffs' CPA claims, the Court is concerned by Plaintiffs' allegations that they did not receive the quality of care they deserved at Defendants' facilities. Generally, actions against nursing homes for failure to follow the accepted standard of care are more properly brought as negligence claims pursuant to Washington Revised Code section 7.70.040. It may be that Plaintiffs had or have stronger claims pursuing that avenue of relief.

ORDER – 11

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment Against Plaintiffs Grieb and Gunderson (Dkt. No. 30) and DENIES Plaintiffs' Motion to Continue the Hearing Pursuant to Federal Rule of Civil Procedure 56(f) (Dkt. No. 36). Because there are no remaining named Plaintiffs, the Court DISMISSES the complaint and DIRECTS the Clerk to close the case.

SO ORDERED this 24th day of March, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 12